GENTRY-FUTCH COMPANY, A CORPORATION, *Appellant*, v.
J. H. GENTRY, *Appellee*.

## Division B.

## Opinion Filed November 23, 1925.

1. While a court of equity, having once obtained jurisdiction
   of a cause, will retain it for all purposes and administer
   complete relief, yet in order to authorize relief which can be
   obtained in a suit at law, there must be some substantial
   ground of equitable jurisdiction both alleged and proven;
   otherwise a court of equity will not retain jurisdiction and
   grant a purely legal remedy.

2. Mandamus lies to seat the person entitled to an office,
   whether of a public nature or in a private corporation, where
   his title thereto has been adjudicated, or is clear, but it is not
   appropriate where there is any question as to the right to the
   office.

3. Ordinarily, an information in the nature of a *quo warranto*
   may be resorted to for the purpose of determining the right
   of contending parties to exercise an office or franchise, not
   only of a public nature, but also of a private corporation.

4. Where there is an adequate remedy at law by *quo warranto*,
   or information in the nature of *quo warranto*, a court of
   equity cannot, in the absence of statute, or some ground of
   equitable jurisdiction to which such relief is germane or in-
   cidental, assume jurisdiction to declare an election void or re-
   move or enjoin officers.

5. Where a court of equity denies the injunctive relief prayed
   for in the bill against a removed officer of a corporation,
   dissolving the temporary injunction therefore granted, and
   denies the appointment of a receiver and the dissolution of
   the corporation as prayed in the cross bill, thus properly dis-
   posing of and eliminating the only grounds of equitable
   jurisdiction presented by both complainant and defendant in
   the cause, it is error to go further and decree the restora-

tion of the defendant to the offices of president and director of the corporation, and adjudicate his right to recover salary as such president; especially so where, as here, it appears that there is another claimant to and incumbent of said offices who was not made a party to the cause.

6. As an incident to the determination of the existence of the grounds of equitable jurisdiction raised by the pleadings, the court below was warranted in considering and passing upon the validity *vel non* of the action taken at the corporate meetings in which it was claimed that the defendant was removed as an officer of the complainant corporation.

7. Where publication of notice of a stockholders' meeting, as required by Section 4078 of the Revised General Statutes of 1920, was not made, and there was no waiver of notice, the action taken at such meeting removing one of the stockholders, who was not present, and did not participate in the meeting, from the offices of president and director of the corporation was illegal and of no effect as to said officer.

8. A corporation by-law providing that no business shall be transacted at any stockholders' meeting unless seventy-five per cent of the stock is represented at such meeting, is void, being in conflict with Section 4082 of the Revised General Statutes of 1920, which provides that "a majority of the stock shall constitute a quorum at stockholders' meetings."

9. In the absence of a statute or by-law requiring it, it is not essential that a person to whom a proxy is given by a stockholder should himself be a stockholder.

10. In the absence of evidence to the contrary, it will ordinarily be presumed that a stockholders' meeting was held in accordance with the statutes, charter and by-laws, and the burden is upon him who claims that the meeting is invalid to show facts that render it so.

11. The general rule is that the minutes of corporate meetings are *prima facie* evidence, and usually the best evidence, of what they purport to show as to corporate business transacted

at such meetings, subject to correction by parol testimony when shown not to be a true record.

12. Under Section 3948 of the Revised General Statutes of 1920, construed so as to give effect to Section 1, of Article XI, of the Constitution, and under the provisions of Section 4083 of the Revised General Statutes of 1920, a married woman may not only vote corporate stock lawfully held by her, but may appoint an agent, other than her husband, to vote such stock for her, by proper proxy, "duly authorized in writing."

13. There is nothing in the statute (Section 4078, Rev. Gen. Stats. 1920), requiring the published notice of stockholders' meetings to be given or signed by any particular officer, and, there being no by-laws to the contrary, such a notice, otherwise properly framed, may be signed by the secretary and treasurer of the corporation.

14. While a corporation cannot ratify absolutely void and *ultra vires* acts, it may. like an indvidual, ratify any act done in its behalf which it had the power to do or to authorize to be done in the first instance.

15. The stockholders of a corporation, having the power to remove an officer, may by appropriate action, at a meeting legally and regularly called, of which notice has been given as required by statute, ratify and make effective from the date of such legal meeting, a resolution, removing an officer of the corporation, adopted at a previous irregular and illegal meeting of which the statutory notice had not been given.

An Appeal from the Circuit Court for Polk County; John S. Edwards, Judge.

Reversed.

*Spencer & Trantham* and *McKay & Withers,* for Appellants;

*Thomas Palmer, W. B. Dickenson, Paterson & Carver* and *C. E. Kensinger,* for Appellee.

BROWN, J.—This was a bill by the appellant, Gentry-Futch Company, complainant in the court below, praying an injunction against the appellee, J. H. Gentry, to restrain him from making any use of certain personal property of the appellant corporation, consisting of certain keys and books of said corporation, and to direct the immediate return of said property to appellant.

The bill alleged that at a stockholders' meeting, held on September 30, 1922 (which is the only meeting mentioned in the bill), of which lawful notice was given to all the stockholders of said appellant corporation, the appellee was removed and discharged from the office of president and another stockholder, viz., his wife, Mrs. Carrie Gentry, elected to that position, and that he was illegally detaining and holding the said personal property above mentioned, which was of great value to appellant, and the loss or destruction of which would work irreparable damage. The cause or grounds for the removal of Gentry as president were not alleged. In the absence of the circuit judge from the state, the injunction was granted by a court commissioner, as prayed for.

The defendant, appellee here, answered the bill, stating that he had delivered the said property into the registry of the court, and moved to dissolve the said injunction, denying that lawful notice had been given of said stockholders' meeting, in that no notice had been published, as required by Section 4087 of the Revised General Statutes of 1920, and also alleging that the by-laws of the corporation required that at least 75 per cent of the stock of said corporation should be represented at any meeting before any business could be transacted thereat, whereas less than that amount was represented at the said meeting, to-wit, not over 50 or 51 per cent of the stock. The answer also set up a prayer for affirmative relief, i. e., the appointment of a receiver for the affairs of said corporation, the dissolu-

tion of the temporary injunction, and that the attempted effort on the part of the company to discharge the defendant be declared void and of no effect.

Shortly after the filing of this answer, the appellant corporation filed its motion for the dismissal of the suit and a dissolution of the injunction which it had obained, upon the ground that the purpose for which the suit was brought had been accomplished and the subject-matter thereof disposed of.

A few days later, and before any action was taken on this motion, the appellant filed an answer to the affirmative matters set up in the defendant's answer by way of cross-bill, setting up, among other things, that the corporation was in a prosperous condition and that a receiver was unnecessary. It also alleged that the services of Gentry as president were not worth $500 per month; that he had admitted it; and that the company could employ a man to perform such work as he had been doing for one-fourth of that amount.

The defendant Gentry then filed an amended answer, alleging more in detail the alleged reasons for the prayer for the appointment of a receiver; also praying for a dissolution of the corporation; and further alleging that he had never been legally removed as president of the corporation and was still its lawful president and entitled to compensation of $500 per month, which had been fixed by the corporation before this litigation began, and praying that the two supposed meetings of the stockholders be declared null and void, the one of September 30, for reasons already stated, and the meeting of October 18, (a meeting held after the filing of the bill,) because the published notice was not signed by the proper officers, and also because the proxies of married women stockholders were not signed or joined in by their respective husbands, and that the defendant be awarded the salary due to him as

such president, at $500 per month, from the time of such attempted removal. No issue was tendered as to the sufficiency of the cause for removal; so the sufficiency or truthfulness of the charges against Gentry, as contained in the minutes afterwards introduced in evidence, was not put in issue; only the lawfulness of the corporate action was attacked.

It is alleged in the amended answer that, as to the meeting of October 18, although the notice was published, it was not signed by proper officers, being signed only by "L. M. Futch, Secretary-Treasurer of the Gentry-Futch Co., "whereas it should have been signed by the president or vice-president, and that no independent action was taken at said meeting removing the defendant or electing a president in his place, but it was simply attempted to ratify the acts and doings of the former supposed meeting. It also appears that appellee was not present at either of said meetings, but receipt of actual notice was not denied.

The final decree, rendered July 5, 1923, (1) denied the prayer of the defendant's cross-bill for the appointment of a receiver and the dissolution of the corporation; (2) granted complainants motion to dissolve the temporary injunction granted, as prayed for by it in its original bill; (3) adjudged that the two supposed meetings of the stockholders, held on September 30 and October 18, were null, void and of no effect, and that the attempt to discharge Gentry as president was illegal and void; (4) held that the said J. H. Gentry, was then, and had been since the institution of the suit, the president and a director of the said corporation; (5) that the said Gentry, as such president, was entitled to receive and recover at the hands of the Gentry-Futch Company, the full amount of his salary at $500 per month from October 1, 1922, to the date of the decree; (6) that the said J. H. Gentry be restored to his said offices of president and director of said Gentry-Futch

Company; and (7) that the complainant be decreed to pay all costs in the case.

The appellant filed a petition for rehearing, upon which, however, no action appears to have been taken.

From this decree the complainant corporation took this appeal.

Since the appellee has filed no cross-assignments of error, that portion of the decree which denied reecivership and dissolution, as prayed for in the answer and cross-bill, is not reviewed.

The appellant contends that, inasmuch as the decree granted complainant's motion to dissolve the injunction prayed for in its original bill, and denied the prayer of the defendant's cross-bill for the appointment of a receiver and the dissolution of the corporation, all the grounds of equitable jurisdiction, raised by either the original bill or answer and cross-bill, were thus disposed of, and that in going further and adjudicating the right of said Gentry to the office of president and his right to recover the salary as such, as prayed in the cross-bill, and restoring him to his said offices of president and director of said corporation, the court was granting relief of a purely legal nature, not authorized under the rules applicable in such cases. Appellant also contends that the court below was not warranted by the evidence in holding the corporate meeting of September 30 and October 18 null and void.

The law on this subject of equity jurisdiction to grant common-law relief is well summarized on pages 370 to 372 of volume 10, Ruling Case Law, as follows:

"In equity a partial or incomplete decree will not be entered. Therefore, for the purpose of avoiding more than one suit and in order that a full, complete, effectual, and final decree adjusting the rights and equities of all parties in interest may be entered and enforced, a court of equity once having assumed jurisdiction of a cause on any equita-

ble ground will reach out and draw into its consideration and determination the entire subject-matter, bringing before it all the parties interested therein, and will retain such jurisdiction until all matters involved in the litigation between the parties or growing out of and connected with the subject-matter of the suit are finally disposed of, even though it is thereby required to pass on strictly legal questions—questions which otherwise would be triable in a court of law—or to grant legal remedies. Thus, on granting an injunction to restrain waste, to compel the abatement of a dam, or for any other cause, a court of equity may, as incident to the relief given, decree that an accounting be taken, and in general it may, when necessary to do complete justice between the parties, ascertain and award damages as incidental to the main relief sought. Similarly, when a court of equity reforms an instrument, it can retain control and enforce it as reformed, administering full relief. Within the spirit of the rule that when the equity powers of the court have been once brought into action, its active jurisdiction will be continued until full justice has been done between the parties come also all those cases in which the defendant in a case demands equitable relief in consequence of equitable aid having been given to the plaintiff and accordingly a court of equity will, on assuming jurisdiction of a case, render to the defendant all necessary relief to which he may be equitably entitled.

"While it is true that a court of equity having once obtained jurisdiction of a cause, will retain it for all purposes and administer complete relief, it is generally conceded, despite the existence of a few opposing decisions, which may be characterized merely as variants from the general rule, that in order to authorize some relief which can be obtained in a suit at law there must be some substantial ground of equitable jurisdiction and if there is no equitable ground of jurisdiction and the remedy sought can be as well

obtained in an action at law,. a court of equity cannot retain jurisdiction and grant a purely legal remedy. Mere statements in a bill on which the chancery jurisdiction might be maintained, but which are not proved, will not suffice to authorize a decree on such parts of the bill as, if standing alone would not give the court jurisdiction, but to justify the retention of a cause not only must some substantial ground of equitable jurisdiction be alleged, but it must also be proved on the hearing. For instance, a bill for specific performance of a contract will not be retained for the assessment of damages where a case is not made for specific performance, and no other special equity is shown which will support jurisdiction of the court. So in general when the jurisdiction fails, all the power of the court also fails, except to give judgment for costs.''

See also 21 C. J. 134-148; Crawford v. Bradford, 23 Fla. 404, 2 South. Rep. 782; Raulerson v. Peeples, 81 Fla. 206, 87 South. Rep. 629.

In support of its contention, the appellant makes the point that appellee could have resorted to either mandamus to restore him to his office, or *quo warranto*, which is the legal remedy provided to test the right of a party to a corporate office. The weight of authority seems to hold that mandamus lies to seat the person entitled to an office, whether a public office or one in a private corporation, where his title thereto has been adjudicated, or is clear, but it is not appropriate where there is any question as to the right to the office. Fletcher on Corp. Vol. 3, pp. 3019-3020; State v. Saxon, 25 Fla. 792, 6 South. Rep. 858; 2 Fla. Digest, p. 491; 19 A. & E. Enc. of L. 767, 868; 38 C. J. 799. And ordinarily, an information in the nature of a *quo warranto* may be resorted to for the purpose of determining the right of contending parties to exercise an office or franchise, not only of a strictly public nature, but also of a private corporation. See Fletcher on Corp., Vol. 3, p.

3014; Brooks v. State (Del.), 79 Atl. Rep. 790, 51 L. R. A. (N. S.) 1126 and cases cited in note; Davidson v. State *ex rel.* Banks, 20 Fla. 785; Crawford v. Bradford, *supra;* State *ex rel.* Merrill v. Gerow, 79 Fla. 804, 85 South. Rep. 144.

The weight of authority is to the effect that where there is an adequate remedy at law by *quo warranto,* or information in the nature of a *quo warranto,* a court of equity cannot, in the absence of statute, assume jurisdiction to declare an election void, or remove or enjoin officers, unless some other ground of equitable jurisdiction is presented. It has no inherent jurisdiction when the mere right to office is involved. Fletcher on Corp., Vol. 3, p. 3020; McDonald v. Rehrer, 22 Fla. 198 and authorities cited.

"Courts of equity do not entertain jurisdiction over corporate elections for the purpose of determining questions pertaining to the right or title to corporate offices, since such questions are properly cognizable only in courts of law, the appropriate remedy being by proceedings at law in the nature of a *quo warranto.* . Nor is the fact that relief is claimed upon the ground of fraud sufficient to warrant a departure from the rule, or to justify a court in such case in granting relief by injunction." High on Inj., sec. 1235.

However, a court of equity has jurisdiction to determine the right to an office and to remove or enjoin an incumbent who is not entitled thereto, when it has jurisdiction of the suit on other grounds, and such relief is merely incidental to the other relief sought—as in a case where an injunction is necessary to prevent fraud or waste or misapplication of assets, or where an accounting is sought, etc., a court may inquire into the validity of an election, and pass upon the title to corporate offices when necessary to do complete justice in a suit of which it has jurisdiction upon other

grounds. Also, if the right to an office has been adjudicated or is clear, mandamus to compel reinstatement is a proper remedy, in case of unjust removal. Generally, equity will not assume jurisdiction for the purpose of reinstating a removed officer. Fletcher on Corp., Vol. 3, pp. 3019, 3020, and cases cited in notes.

It thus appears, that when the court below dissolved the injunction prayed for by the bill of the appellant, it disposed of and adjudicated adversely to the appellant the only ground of equitable jurisdiction alleged in the bill (which was very tenuous at best, the sole object of the bill, apparently, being to secure from the appellee certain keys and books of the corporation, and which it is quite probable could have been effectuated by a legal remedy, if, in fact, the appellee had been lawfully removed from office), and when it denied the prayer of a defendant's cross-bill for the appointment of a receiver and a dissolution of the corporation, it disposed of the only ground of equitable jurisdiction upon which the cross-bill was based; thus denying, and disposing of, all matters of equitable jurisdiction contained in either bill or cross-bill.

And, we might add, an examination of the pleadings and the evidence in the case, has convinced us that the court was justified in its action in regard to these matters.

Having thus disposed of the only grounds of a strictly equitable jurisdiction thus raised by the bill, answer and cross-bill, was the court justified in going further and adjudicating the right of the appellee to the office of director and president of the corporation, and adjudicating his rights to recover salary?

This court is of the opinion that the court below was justified in determining, under the allegations of the bill and the cross-bill, the lawfulness of the attempted action, at the stockholders' meetings of September 30 and October 18, to remove and discharge the appellee from the office of

president. This was necessarily incidental to the determination of the prayers for relief on equitable grounds. The appellant cannot complain of such action, because the appellant, by its bill, raised the question of the legality *vel non* of the removal of the appellee from the office of president. The determination of this question was necessarily incidental to the determination of the appellant's right to the relief prayed. Nor does the appellee complain, of course; because the decision was in his favor, and was made in response to his prayer in the cross-bill, that both meetings he held null and void, and the appellee awarded his salary as president. But we are further of the opinion that the court should have stopped there. All grounds of equitable jurisdiction having been properly denied and eliminated, the court was not jutified in decreeing that the appellee be restored to the offices of president and director, nor in adjudicating his right to recover the full amount of his salary from October 1, 1922, to the date of the decree. This was not germane, nor incidental, to any ground of equitable jurisdiction existing in the case; all such having been extinguished. The answer and cross-bill did not, in fact, pray that the appellee be restored to the office of either president or director. It did allege that he was still the president of the corporation, and asked that he be awarded his salary as such. The evidence showed that it was attempted, at the meetings of September 30 and October 18, to remove him from both offices, but, in decreeing his restoration to the offices of president and director, the court actually went beyond the specific prayer in the cross-bill. The appellee should have been relegated to his legal remedies, as to recovery of salary and as to restoration to office.

We are strengthened in this conclusion by reason of the fact that it appears from the pleadings and evidence that there was another claimant to the offices of president and

director, viz.: Mrs. Gentry, who had not been made a party to the cause, and who was entitled to be heard before restoration was granted. And it further appears from the evidence that the appellee Gentry owed the corporation something over $2300, being an overdraft accruing before this suit was filed, which could have been pleaded as a set-off, if appellee had been relegated to his common-law remedy. We conclude, therefore, that the court below was not justified in adjudicating the right of J. H. Gentry to be restored to the offices of president and director and that he be entitled to recover the full amount of his salary from the date of his discharge up to the date of the decree at the rate of $500 per month.

It is not necessary for this court, on this record, to pass upon the question as to whether or not an officer of a corporation who has been elected to a definite term of office, and who is removed from office before the expiration of his term, can, in the absence of a special contract of employment, recover the salary for the unexpired term. Nor is any question raised in this case to the effect that the directors, rather than the stockholders, were vested with the power of removal of a president or director. The parties seem to have assumed, that in this case the stockholders, under a proper construction of the statutes, the by-laws of the corporation and the previous practice of the corporation, were vested with the power of election and removal of the officers of the corporation.

This disposes of all, but one, of the assignments of error. Under this last assignment it remains to consider whether or not the court below was in error in holding that the stockholders' meeting of September 30 and October 18 were null and void.

The action of the court below in holding the stockholders' meeting of September 30 illegal and the action taken null and void, as against the appellee Gentry

was warranted by the evidence, which showed that the publication of notice required by Section 4078 of the Revised General Statutes of 1920, had not been made, nor had the defendant ever waived the lack of proper notice. But we find that the court was in error in so holding as to the meeting of October 18, at which the resolution of removal was ratified and confirmed. None of the allegations of the appellee's answer and cross-bill, attacking the validity of this stockholders' meeting, are tenable.

In support of the decree in the court below, holding the meeting of October 18 void, it is first contended by appellee Gentry that there was not sufficient stock legally represented at the meeting to represent a quorum, that is, that at most only 50 or 51 per cent of the stock was represented at the meeting, whereas the by-laws of the corporation provided that no business should be transacted at any meeting without there being 75 per cent of the stock represented at said meeting. This provision of the by-laws is void, being in conflict with Section 4082 of the Revised General Statutes of 1920, which reads: "A majority of the stock shall constitute a quorum at stockholders' meetings." This announces a general statutory policy and principle which, of course, cannot be changed by a corporate by-law.

It is also contended that not even a majority of the stock, that is, 51 shares, the total issue being 100 shares, was legally represented at such meeting; that the evidence does not sufficiently show that Edwin S. Spencer, Jr., who voted the stock of Mrs. Gentry, one share, that of Mrs. Futch, 49 shares (the other share being represented by the owner, L. M. Futch, in person), was duly authorized by proper proxies, which both the by-laws and the statute required to be in writing, and said original proxies were never produced in evidence. The minutes of the stockholders' meeting, which were introduced in evidence without objection, showed that L. M. Futch was present, representing one

share of stock, and that Edwin S. Spencer, Jr., was present, "representing by proxy in due form one share of stock owned by Carrie Gentry and 49 shares of stock owned by Fannie G. Futch," and further recites that the proxies of these stockholders were presented and filed. Edwin S. Spencer, Jr., testified that he held these two proxies at the time and presented them at the meeting; that they were in writing and constituted a complete proxy and power of attorney to act for each of these women in all matters relating to the Gentry-Futch Company, and to vote their stock at all meetings, special or regular; that they were acknowledged before a notary public and witnessed; that he remembered and gave the name of one of the witnesses; that they were in his files somewhere, but he had been unable to find them; however, that he would endeavor to find them and produce them in evidence before the final hearing, if they could be found. The record does not disclose that these were ever produced. L. M. Futch, secretary of the corporation, testified that he saw these proxies and that he supposed they were now in Mr. Spencer's files. There was no evidence offered in contradiction of the testimony of these two witnesses on this point.

Unless the statute or by-laws require it, it is not essential that the person to whom a proxy is given should himself be a stockholder. This disposes of one of the objections. See 14 C. J. 909, and cases cited. Nor is any particular form of words necessary to constitute a proxy.

In the absence of evidence to the contrary, it will be presumed that a stockholders' meeting was held in accordance with the statutes, charter and by-laws, and the burden is upon one who claims that the meeting is invalid to show facts that render it so. 14 C. J. 922.

Ordinarily, the minutes of corporate meetings are prima facie evidence, and usually held to be the best evidence of what they purport to show as to the corporate business

20—Vol. 90.

transacted at such meetings.   14 C. J. 920; Fletcher on Corp. Vol. 4, pp. 4047-9; Heliwell on Stock and Stockholders, 422.   Of course, such minutes are subject to contradiction, and it is permissible to show by parol what was the actual proceedings, if the minutes do not correctly record them.

It has also been held that when the validity of an election is attacked, it will be presumed, in the absence of evidence to the contrary, that proxies presented and voted were regularly executed and given by persons entitled to vote.   People v. Crossley, 69 Ill. 195; White v. New York Agri. Soc. 45 Hun (N. Y.) 580; Fletcher on Corp. Vol. 3, p. 2841.

However, the execution of the proxies is impliedly admitted by the appellee's answer and cross-bill, which allege, not that they were not executed as claimed, but that they were not signed or joined in by the husbands of the makers, who were married women and not free-dealers.   Such joinder was not necessary.

Section 3948 of the Revised General Statutes of 1920, which provides that the property of the wife shall remain in the care and management of the husband, must be construed so as to give effect to Section 1 of Article XI of the Constitution of 1885, which vests the property of her separate estate, and not merely the title thereto, in the wife, and, so construed, it gives to the husband no present title or interest, legal or equitable, in the wife's separate property.   It merely provides an agency in the husband, that, in view of the organic provision, may be terminated by the wife, by taking the management of her property out of his hands and personally assuming it, or by appointing a new agent.   Florida Citrus Exchange v. Grisham, 65 Fla. 46, 61 South. Rep. 123; Witt Co. v. Moody, 72 Fla. 459, at p. 464, 73 South. Rep. 582; LeNoir v. McDaniel, 80 Fla. 500, 86 South. Rep. 435; Craft v. American Agri. Chem. Co., 81 Fla. 55, at p. 58, 87 South. Rep. 41.

It follows from the principles announced in these cases that a married woman may not only vote corporate stock lawfully held by her, but that she may appoint an agent, other than her husband and give him authority to vote such stock for her by proper proxy. Furthermore, Section 4083 of the Revised General Statutes of 1920 provides, without any distinction as to whether the stockholders be married or single, that at stockholders' meetings each stockholder shall be entitled to one vote for each share of stock, and that stockholders may vote by proxy, duly authorized in writing.

The appellee's answer and cross-bill also allege that notice of the stockholders' meeting was void, because not signed by the president or vice-president, but only by the secretary and treasurer. This contention is without merit. There is nothing in the statute requiring the notice to be given by any particular officer, and the by-laws of this corporation expressly provided that the secretary or the president could call a special meeting of the stockholders.

The last attack made by the cross-bill on the validity of the meeting of October 18, is that no action was taken at that meeting removing the president from office, but that it was simply attempted to ratify the action of the irregular and illegal meeting of September 30, and that such action could not have the effect of removing the appellee from office.

The minutes of October 18 show that the minutes of the former meeting of September 30, which were recorded in the corporate minutes and contained a resolution removing the appellee from office, were read and approved, and that all of the acts and doings of said meeting were duly ratified and confirmed by the unanimous vote of the stockholders present. There appears in the minutes these words: ''It was the unanimous agreement of the stockholders that the discharge of the said J. H. Gentry from the 1st day of October, 1922, be ratified in every particular, and that no sal-

aries be paid J. H. Gentry from that time. The election of Carrie Gentry as president of the corporation was duly ratified and confirmed, and all other acts of the stockholders at said meeting were ratified and confirmed.''

There also appears in the minutes of this meeting the adoption of a resolution ratifying and confirming the action of the former meeting in removing J. H. Gentry as a director. It is true that there was no independent resolution adopted *exproprio vigore* removing appellee from office. Nor was this necessary. While a corporation cannot ratify absolutely void and *ultra vires* acts, it may, like an individual, ratify any act done on its behalf which it had the power to do or to authorize to be done in the first instance. Fletcher on Corp. Vol. 4, pp. 3378 *et seq.*; 14A C. J. 373-381; State v. Florida Cent. R. R. Co., 15 Fla. 690; National Surety Co. v. Williams, 74 Fla. 446, at pp. 472-3, 77 South. Rep. 212. The passage of the resolution at the meeting of October 18, ratifying the action of the meeting of September 30 in this regard, did not, under the circumstances of this case, relate back so as to make the removal of the appellee as president and director take effect as of the date of said prior meeting. The removal only became effective as of the date of the passage of the ratification resolution.

This disposes of all of the charges of invalidity as to the meeting of October 18, made by appellee's answer and cross-bill, none of which are well founded. It is, therefore, held that the court below was in error in adjudging and decreeing that said meeting, and the actions there taken, were null and void and of no effect.

Reversed and remanded for further proceedings consistent with this opinion.

WHITFIELD, P. J., AND STRUM, J. concur.

WEST, C. J., AND ELLIS AND TERRELL, J. J., concur in the opinion.