PARKER, Chief Judge.
Belcher Partnership, Inc. (Belcher), plaintiff in the trial court, seeks review of two final judgments entered against it in this *654 case in which it sought damages for trespass, breach of contract, unjust enrichment, waste and environmental damage. The complaint was based upon defendants’, Richard L. Ferguson and Rick’s European Connection Inc. (Ferguson), continuous use of the real property owned by Belcher.[1] We reverse because the trial court erred in determining that the parties had reached a settlement agreement and by awarding attorney’s fees pursuant to an offer of judgment.[2]
John Wilson, Francis Wilson, and Philip Rollhaus were the trustees of a Chicago trust (the Wilson trust) that owned the property before Belcher purchased it in May 1994. The trustees listed the property with several realtors. Jack Wilson received notice from several people that Ferguson was using the vacant property to store his wrecked cars. In 1992, Jack Wilson wrote a letter to Ferguson demanding that he remove his personal property within two weeks. Ferguson tried to work out a deal whereby he would remove some old fuel tanks and his cars in exchange for his unauthorized use of the property. Jack Wilson denied that he had any business arrangement with Ferguson. Although Ferguson removed a few items from the property, he continued to store wrecked cars on the property until September 1994.
In 1994, Belcher wanted to purchase the property but was aware that there was a problem with Ferguson. In May 1994, Bel-cher acquired the property by quitclaim deed. Belcher purchased the property for below market value because of the problems with Ferguson and the potential liability for environmental damage due to fluids leaking out of the wrecked cars onto the property. During the contract period, Belcher sent a letter to Jack Wilson confirming their contract and stating that the contract included an assignment of rights to any cause of action that the Wilson trust would have had due to the hostile tenant. The record does contain an assignment of rights.
Following four letters from Belcher’s attorney trying to resolve the problem with Ferguson, Belcher filed suit. The trial court determined that these letters constituted a valid settlement agreement and that Belcher had breached the agreement thereby excusing Ferguson from further performance. The trial court ordered Ferguson to pay rent to Belcher for only the time that Belcher had owned the land, off-set by one month’s rent.
In Bateski v. Ransom, 658 So.2d 630, 631 (Fla. 2d DCA 1995), this court concluded that a valid [settlement] agreement is “a predicate to an order of enforcement.” The issue in Bateski was whether the insured had entered a valid settlement agreement with the insurer. This court found that the evidence did not support that a settlement agreement had been reached by the parties and noted that settlement agreements are governed by contract law and in order to be enforceable the agreement must be “sufficiently specific and the parties must mutually agree on every essential element.” Id. at 631. See also Mid-State Fed. Sav. Bank v. Marketing & Management Assoc., Inc., 570 So.2d 1016, 1017 (Fla. 5th DCA 1990) (“It is a recognized principle of contract law that if the acceptance of an offer is to result in a contract, it must be absolute and unconditional, identical with the terms of the offer.”).
Although there were letters and discussions in this case attempting to settle the dispute, the record supports that there was never a meeting of the minds on the essential terms of any of the offers. There was no meeting of the minds regarding the deadline for the removal of the wrecked ears, the amount of current rent, or the schedule for the payment of past rent.[3] Accordingly, the trial court erred in determining that there was a completed settlement agreement.
Due to our resolution of this issue, it is not necessary to address the other points raised on appeal. Furthermore, because we have determined that the trial court erred in finding that a settlement agreement existed, we also reverse the final judgment awarding at *655 torney’s fees to Ferguson pursuant to section 768.29(1), Florida Statutes (1995).
Reversed and remanded.
FRANK and QUINCE, JJ., concur.

. Ferguson owned the adjoining properly.

. § 768.79(1), Fla. Slat. (1995).

.It is undisputed that Ferguson stored wrecked motor vehicles on this property without any rights to the property from 1990 until 1994.